IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


CLARISSA MUNDAY,                  )
                                 )
                Plaintiff,       )
                                 )
vs.                              )      Case No. 07-1052-MLB
                                 )
MICHAEL J. ASTRUE,               )
Commissioner of                  )
Social Security,                 )
                                 )
                Defendant.       )
_____)


RECOMMENDATION AND REPORT


     This is an action reviewing the final decision of the
Commissioner of Social Security denying the plaintiff
supplemental security income payments.  The matter has been fully
briefed by the parties and has been referred to this court for a
recommendation and report.

**I.  General legal standards**

     The court's standard of review is set forth in 42 U.S.C.
§ 405(g), which provides that "the findings of the Commissioner
as to any fact, if supported by substantial evidence, shall be
conclusive."  The court should review the Commissioner's decision
to determine only whether the decision was supported by
substantial evidence and whether the Commissioner applied the

1

correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion. <u>Ray v. Bowen</u>, 865 F.2d 222, 224 (10th Cir. 1989). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. <u>Graham v. Sullivan</u>, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. <u>Glenn</u>, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial

gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not

to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. § 404.1520(a)(4); 404.1520(f,g).

II.  **History of case**

On June 30, 2006, administrative law judge (ALJ) James Francis Gillet issued his decision (R. at 11-19).  Plaintiff alleged disability beginning June 12, 2001 (R. at 11).  At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity at any time relevant to the decision

(R. at 13).  At step two, the ALJ found that plaintiff had the following severe impairments: migraine headaches, bilateral knee pain, arthritis of the right knee, low back pain, bursitis (lumbar disc disease, with mild stenosis), post traumatic stress disorder (PTSD), mild, and dysthymia (R. at 13).  The ALJ further determined at step two that plaintiff's fibromyalgia and irritable bowel syndrome were not severe impairments (R. at 15). At step three, the ALJ found that plaintiff's impairments do not meet or equal a listed impairment (R. at 16).  After establishing plaintiff's RFC, the ALJ found at step four that plaintiff cannot perform past relevant work (R. at 18).  At step five, the ALJ found that plaintiff can perform other work which exists in significant numbers.  Therefore, the ALJ concluded that plaintiff was not disabled (R. at 18).

**III.  Did the ALJ err by failing to consider the opinions of Dr. Zimmerman, plaintiff's treating physician?**

Dr. Zimmerman provided medical treatment for the plaintiff from 2002-2006 (R. at 260-287, 321-336, 425-437).  In a statement dated March 10, 2006, Dr. Zimmerman indicated that plaintiff had limitation of motion of the spine and then set forth the following specific limitations:

> 1. moderate pain
> 2. standing at one time: 15 minutes
> 3. sitting at one time: 15 minutes
> 4. hours patient can work per day: 2 hours
> 5. lifting 5 pounds on an occasional basis

                    6.   lifting 5 pounds on a frequent basis
                    7.   never bend
                    8.   never stoop

(R. at 414-415).

        The ALJ summarized the opinions of Dr. Zimmerman as follows:

                Finally, in March 2006, Dr. Zimmerman
                completed a medical "checklist" regarding the
                claimant's continuing complaints of low back
                pain. Diagnosis reported at that time
                continued to be "mild" right neuroforaminal
                stenosis at the L4/L5 level. In addition, it
                was Dr. Zimmerman's opinion that the
                claimant's low back pain resulted in
                limitation motion of the spine and "moderate"
                pain. Furthermore, he reported that as a
                result of the claimant's pain issues, it was
                his opinion she should avoid bending and
                stooping.

(R. at 15).  The ALJ did not even mention many of the specific

limitations or restrictions opined by Dr. Zimmerman.

Furthermore, the ALJ's RFC findings failed to adopt most of the

restrictions or limitations opined by Dr. Zimmerman, including

those regarding sitting and standing at one time, the hours

plaintiff can work per day, the limitation on occasional lifting,

and the opinion that plaintiff can never bend or stoop.  The ALJ

also failed to provide any explanation for not including most of

these restrictions or limitations in his RFC findings.

        The opinions of physicians who have seen a claimant over a

period of time for purposes of treatment are given more weight

over the views of consulting physicians or those who only review

the medical records and never examine the claimant.  The opinion

of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. <u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1084 (10th Cir. 2004). A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. <u>Castellano v. Secretary of Health & Human Services</u>, 26 F.3d 1027, 1029 (10th Cir. 1994); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion. <u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1083 (10th Cir. 2004). A treating source opinion not entitled to controlling weight is still entitled to deference and must be weighed using all of the following factors:

(1) the length of the treatment relationship and the frequency of examination;
(2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
(3) the degree to which the physician's opinion is supported by relevant evidence;
(4) consistency between the opinion and the record as a whole;
(5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

<u>Watkins v. Barnhart</u>, 350 F.3d 1297, 1300-1301 (10th Cir. 2003).

7

After considering the above factors, the ALJ must give good reasons in his decision for the weight he ultimately assigns the opinion.  If the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so.  <u>Watkins</u>, 350 F.3d at 1301.

An ALJ must evaluate every medical opinion in the record, although the weight given to each opinion will vary according to the relationship between the disability claimant and the medical professional.  <u>Hamlin v. Barnhart</u>, 365 F.3d 1208, 1215 (10th Cir. 2004).  In the determination of issues reserved to the Commissioner, such as opinions regarding: whether an impairment meets or equals a listing, plaintiff's RFC, whether a plaintiff can do past relevant work, how age, education, and work experience apply, and whether a plaintiff is disabled, treating source opinions are not entitled to special significance or controlling weight.  <u>Soc. Sec. Rul.</u> 96-5p, (Medical Source Opinions on Issues Reserved to the Commissioner), 1996 WL 374183, at *2.  However, even on issues reserved to the Commissioner, including the RFC determination and the ultimate issue of disability, opinions from any medical source must be carefully considered and must never be ignored.  Social Security Ruling (SSR) 96-5p, 1996 WL 374183 at *2-3.  It is clear legal error to ignore a medical opinion.  <u>Victory v. Barnhart</u>, 121 Fed. Appx. 819, 825 (10th Cir. Feb. 4, 2005).  It is reversible error for

8

the ALJ not to discuss uncontroverted evidence he chooses not to rely on, as well as significantly probative evidence he rejects. Grogan v. Barnhart, 399 F.3d 1257, 1266 (10th Cir. 2005).

In the case of Victory v. Barnhart, 121 Fed. Appx. at 825, the court indicated that the ALJ, inexplicably, had made no mention of Dr. Hale's opinions and gave no reason for disregarding his opinions.  The court held that this was clear legal error.  The ALJ in this case (Munday) clearly erred by failing to give any reason for disregarding most of the restrictions or limitations opined by Dr. Zimmerman, who had treated plaintiff from 2002-2006.  Therefore, the case shall be remanded in order for the ALJ to consider and determine what weight should be accorded to the restrictions or limitations opined by Dr. Zimmerman, and reexamine plaintiff's credibility and RFC findings in light of Dr. Zimmerman's opinions.  The court would note that there is no medical evidence in the record which contradicts the RFC opinions expressed by Dr. Zimmerman.[1]

**IV. Did the ALJ err in his RFC findings?**

According to SSR 96-8p the RFC assessment "must include a narrative discussion describing how the evidence supports each

---

[1]Dr. Siwek, another treating physician, stated in his medical records on October 21, 2005 that plaintiff should "avoid squatting and kneeling" (R. at 412).  This opinion was not mentioned by the ALJ, and the ALJ's RFC findings indicate that plaintiff can squat and kneel on an occasional basis (R. at 16).  Therefore, on remand, the ALJ must also consider these limitations by Dr. Siwek.

conclusion, citing specific medical facts...and nonmedical evidence." The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184 at *7. SSR rulings are binding on an ALJ. 20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence. See Southard v. Barnhart, 72 Fed. Appx. 781, 784-785 (10th Cir. July 28, 2003). The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review; the ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence. Spicer v. Barnhart, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5, 2003). It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his conclusions. Cruse v. U.S. Dept. of Health & Human Services, 49 F.3d 614, 618 (10th Cir. 1995). When the ALJ has failed to

comply with SSR 96-8p because he has not linked his RFC
determination with specific evidence in the record, the court
cannot adequately assess whether relevant evidence supports the
ALJ's RFC determination.   Such bare conclusions are beyond
meaningful judicial review.   Brown v. Commissioner of the Social
Security Administration, 245 F. Supp.2d 1175, 1187 (D. Kan.
2003).

The ALJ made the following RFC findings:

> After careful consideration of the entire
> record, the undersigned finds that the
> claimant has the residual functional capacity
> to lift and carry objects weighing up to 10
> pounds occasionally, 5 pounds frequently; sit
> (with normal breaks and meal period with
> allowance to change positions every hour and
> stretch for about 2 minutes) about 2 hours
> within an 8 hour workday; stand and/or walk
> (with normal breaks and meal period and
> allowance to change positions every hour and
> stretch for about 2 minutes) about 6 hours
> within an 8 hour workday. In addition, she
> has the following restrictions/limitations:
> the ability to reach with the left
> non-dominant hand above the shoulder is
> prohibited; she is unable to perform
> repetitive neck flexions at a rapid pace;
> pushing or pulling with the lower extremities
> is prohibited; and she should never perform
> postural tasks involving crawling. However,
> she can perform postural tasks involving
> stooping, squatting, kneeling, and climbing
> ramps and stairs on an occasional basis.
> Furthermore, she should avoid using air or
> vibrating tools; avoid operating motor
> vehicles; avoid working around moving
> machinery, mobile machinery or moving parts;
> and avoid working at unprotected heights.
> Moreover, her ability to remember, carry out,
> and understand detailed instructions is
> moderately, to at times, markedly limited.

(R. at 16).

Although the ALJ summarized the medical evidence, the ALJ, in violation of SSR 96-8p, did not include a narrative discussion describing how the evidence supported any of his RFC findings. Nothing in the ALJ's summary of the medical or other evidence provides any indication of the basis for the ALJ's RFC findings. In addition, the ALJ failed to address the medical source opinions of Dr. Zimmerman, plaintiff's treating physician, and failed to explain why most of his opinions regarding plaintiff's restrictions or limitations were not adopted.

In the case of <u>Kency v. Barnhart</u>, Case No. 03-1190-MLB (D. Kan. Nov. 16, 2004), the record was devoid of any identifiable discussion explaining how the ALJ arrived at his RFC conclusions from the evidence or how the evidence supported his conclusions. <u>Kency</u>, (Doc. 21 at 5). In <u>Kency</u>, the court held as follows:

> ...the ALJ simply listed all the evidence contained in the record and then set forth his conclusion without explaining the inconsistencies and ambiguities contained in the opinions. He did not connect the dots, so to speak, as is required by S.S.R. 96-8p. It may well be that upon remand, the ALJ will reach the same conclusion. Nevertheless, S.S.R. 96-8p is defendant's requirement and ALJs presumably are the experts whose responsibility it is to know and follow defendant's requirements...
>
> Most important, the ALJ must explain how the decision was reached. When an ALJ merely summarizes the facts, notes that he has considered all of the facts, and then announces his decision, there is nothing for

the court to review. The court cannot know
how the ALJ analyzed the evidence. When the
evidence is contradictory or ambiguous, as it
is in most cases, the court cannot know which
evidence was given what weight, or how the
ambiguities were resolved. Therefore, to
determine whether substantial evidence
supports the conclusion, the court would have
to reweigh the evidence. Since that option is
precluded by law, the court can only remand
to the defendant for a proper explanation of
how the evidence was weighed and ambiguities
resolved.

Kency, (D. Kan. Nov. 16, 2004, Doc. 21 at 7, 9); see also Wolfe
v. Barnhart, Case No. 05-1028-JTM (Doc. 25 at 3, July 25,
2006)("It is insufficient for the ALJ to generally discuss the
evidence but fail to relate the evidence to his conclusions"). 
In Kency, the court held that it was not at all clear to the
court how the RFC, as a whole, was derived.  (Doc. 21 at 8).

In the case presently before the court (Munday), the court
similarly finds that it is not at all clear how the RFC was
derived, or why most of the restrictions and limitations opined
by Dr. Zimmerman, plaintiff's treating physician, were not
adopted.  SSR 96-8p was issued on July 2, 1996.  1996 WL 374184.
Judge Belot issued the Kency opinion on November 16, 2004.  The
ALJ decision in this case was dated June 30, 2006, well after the
issuance of SSR 96-8p and the filing of the Kency opinion.  No
reasonable explanation is offered for the ALJ's failure to comply
with the requirements of SSR 96-8p and the Kency opinion; the
Kency opinion does nothing more than to require ALJs to comply

with the agency's own ruling.  Therefore, this case shall be
remanded in order for the ALJ to comply with SSR 96-8p.

**V.  Did the ALJ err in his step two findings?**

The burden of proof at step two is on the plaintiff.  <u>See</u>
<u>Nielson v. Sullivan</u>, 992 F.2d 1118, 1120 (10th Cir. 1993)(the
claimant bears the burden of proof through step four of the
analysis).  A claimant's showing at step two that he or she has a
severe impairment has been described as "de minimis."  <u>Hawkins v.</u>
<u>Chater</u>, 113 F.3d 1162, 1169 (10th Cir. 1997); <u>see</u> <u>Williams v.</u>
<u>Bowen</u>, 844 F.2d 748, 751 (10th Cir. 1988)("de minimis showing of
medical severity").  A claimant need only be able to show at this
level that the impairment would have more than a minimal effect
on his or her ability to do basic work activities.[2]  <u>Williams</u>,844
F.2d at 751.  However, the claimant must show more than the mere
presence of a condition or ailment.  If the medical severity of a
claimant's impairments is so slight that the impairments could
not interfere with or have a serious impact on the claimant's
ability to do basic work activities, the impairments do not

---

[2]Basic work activities are "abilities and aptitudes
necessary to do most jobs," 20 C.F.R. § 404.1521(b)[416.921(b)],
including "walking, standing, sitting, lifting, pushing, pulling,
reaching, carrying or handling; seeing, hearing, and speaking;
understanding, carrying out, and remembering simple instructions;
use of judgement, responding appropriately to supervision,
coworkers, and usual work situations; and dealing with changes in
a routine work setting." Social Security Ruling 85-28, 1985 WL
56856 at *3.  <u>Langley v. Barnhart</u>, 373 F.3d 1116, 1123 (10th Cir.
2004).

prevent the claimant from engaging in substantial work activity. Thus, at step two, the ALJ looks at the claimant's impairment or combination of impairments only and determines the impact the impairment would have on his or her ability to work.  Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997).

A claimant must provide medical evidence that he or she had an impairment and how severe it was during the time the claimant alleges they were disabled.  20 C.F.R. § 404.1512(c), § 416.912(c).  The evidence that a claimant has an impairment must come from acceptable medical sources including licensed physicians or psychologists.  20 C.F.R. § 404.1513(a), § 416.913(a).  Evidence from other medical sources, including therapists, nurse-practitioners, and physicians' assistants, may be used to show the severity of an impairment and how it affects the ability to work.  20 C.F.R. § 404.1513(d)(1), § 416.913(d)(1).

Plaintiff argues that the ALJ erred by finding that plaintiff's fibromyalgia and irritable bowel syndrome were not severe impairments.  Plaintiff has the burden of proof at step two.  However, plaintiff has not provided any medical opinion evidence that either of these impairments would have more than a minimal effect on her ability to perform basic work activities. For this reason, the court finds no error in the ALJ's finding at step two that plaintiff's fibromyalgia and irritable bowel

syndrome are not severe impairments.

**VI.  Did the ALJ err in his credibility analysis?**

As the court noted above, on remand, the ALJ shall reevaluate plaintiff's credibility in light of Dr. Zimmerman's opinions regarding plaintiffs limitations or restrictions.  For this reason, the court will not examine in detail the ALJ's credibility findings.

However, one issue has been raised by the parties which needs to be addressed.  Plaintiff argues error by the ALJ in relying on plaintiff's failure to pursue certain types of treatment without applying the <u>Frey</u> test (Doc. 9 at 17-19). Defendant argues that the <u>Frey</u> test is not applicable on the facts of this case (Doc. 12 at 14-16).  This issue has been previously addressed by the court and will be quoted here for guidance to the ALJ upon remand:

> Before the ALJ may rely on his failure to pursue treatment or take medication as support for his determination of noncredibility, he or she should consider: (1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and if so, (4) whether the refusal was without justifiable excuse. <u>Thompson v. Sullivan</u>, 987 F.2d 1482, 1490 (10th Cir. 1993); <u>Frey v. Bowen</u>, 816 F.2d 508, 517 (10th Cir. 1987). This analysis applies even when noncompliance with a physician's recommendation is used only as part of the credibility determination. <u>Piatt v. Barnhart</u>, 231 F. Supp.2d 1128, 1129 (D. Kan. Nov. 15, 2002)(Robinson, J.); <u>Silverson v. Barnhart</u>,

16

> Case No. 01-1190-MLB (D. Kan. May 14,
> 2002)(Belot, J.); Goodwin v. Barnhart, 195 F.
> Supp. 2d 1293, 1294-1296 (D. Kan. (April 15,
> 2002)(Crow, S.J.).
>    Defendant contends that the Frey test is
> not applicable in this case.  However, the
> ALJ discounted plaintiff's credibility
> because of his failure to follow medical
> advice to have surgery and because of his
> decision to quit taking prescription
> medications.  Thus, this is not a situation
> where the Frey test is not required because
> the treatment or medication had not been
> prescribed, and the ALJ is simply considering
> what attempts the claimant made to relieve
> their pain.  See McAfee v. Barnhart, 324 F.
> Supp.2d 1191, 1201 (D. Kan. 2004); Jesse v.
> Barnhart, 323 F. Supp.2d 1100, 1108 (D. Kan.
> 2004); Billups v. Barnhart, 322 F. Supp.2d
> 1220, 1226 (D. Kan. 2004).  Therefore, on
> remand, the ALJ must apply the Frey test when
> considering plaintiff's decision not to have
> surgery or to quit taking prescription
> medications as part of the credibility
> analysis.

Smith v. Barnhart, Case No. 06-1157-MLB, Doc. 10 at 11-12, 2007

WL 461472 at *5 (D. Kan. Feb. 13, 2007).  On remand, the ALJ

shall follow these guidelines in determining whether or not the

Frey test should be applied when considering plaintiff's failure

to obtain certain types of treatment.

    Furthermore, when considering the use of, or more extensive

use, of certain treatment options, the ALJ should also consider

this court's ruling in Tracy v. Astrue, Case No. 06-1194-WEB,

Doc. 28 at 22, ___ F. Supp.2d ___, 2007 WL 2851920 at *9 (Sept.

5, 2007):

> However, the ALJ did not cite to any medical
> source who recommended the use of, or more

17

extensive use of, these treatment options. In
the case of <u>Hamlin v. Barnhart</u>, 365 F.3d
1208, 1221 (10th Cir. 2004), the ALJ noted
that the claimant did not require an
assistive device for his neck.  The court
held that there is no evidence that any
physician recommended such a device or
suggested that one would have provided any
pain relief.  The court stated that an ALJ is
not free to substitute his own medical
opinion for that of a disability claimant's
treating doctors.  The ALJ is not entitled to
*sua sponte* render a medical judgment without
some type of support for his determination.
The ALJ's duty is to weigh conflicting
evidence and make disability determinations;
he is not in a position to render a medical
judgment.  <u>Bolan v. Barnhart</u>, 212 F. Supp.2d
1248, 1262 (D. Kan. 2002).  In the absence of
any medical evidence to indicate that the
treatment options (or greater use of the
treatment options) mentioned by the ALJ were
recommended by medical treatment providers or
would have provided any relief, the ALJ
overstepped his bounds into the province of
medicine.  <u>Miller v. Chater</u>, 99 F.3d 972, 977
(10th Cir. 1996).

IT IS THEREFORE RECOMMENDED that the decision of the

Commissioner be reversed, and that the case be remanded for

further proceedings (sentence four remand) for the reasons set

forth above.

Copies of this recommendation and report shall be provided

to counsel of record for the parties.  Pursuant to 28 U.S.C. §

636(b)(1), as set forth in Fed.R.Civ.P. 72(b) and D. Kan. Rule

72.1.4, the parties may serve and file written objections to the

recommendation within 10 days after being served with a copy.

18

Dated at Wichita, Kansas, on October 9, 2007.

                                     s/John Thomas Reid
                                     JOHN THOMAS REID
                                     United States Magistrate Judge